Campbell & Jones *vs.* Murray *et al.*

---

CAMPBELL & JONES *vs.* MURRAY *et al.*

1. When an individual farms upon the land of other persons without their consent and against their objection, and contracts debts in his own name for advances and supplies to carry on the business, the debts are his own, and not those of the owners of the premises. This is true though the owners may be his wife and her sister, and though he may intend the profits for their benefit.
2. A conveyance of the wife's land to secure the husband's debt is void.

3. If a man's sister-in-law, of full age, though residing in his family and looking up to him for protection, becomes his surety and conveys her land to his creditor to further secure the debt, she is bound just as any other person performing the like acts would be. Any fraud or misrepresentation practiced by him to influence her action would not affect the creditor unless the creditor participated in the wrong or had notice thereof.

4. A debtor is not the agent of his creditor in procuring security, though the creditor designate the very security required, and furnish to the debtor the instruments of writing which he demands to be executed by third persons as a condition precedent to granting indulgence on the debt.

5. A deed dated, signed and attested whilst the usury laws were in force, with no intention of the parties to postpone delivery, was not relieved from the operation of those laws by the absence of the grantees from the place of execution, and the failure of the deed to come to their actual possession until after said laws were repealed.

6. Though a deed be void for usury, equity will not decree its cancellation without payment or tender of the principal and lawful interest. Whoever would have equity must do equity.

7. In polling the jury, the better form of question is, "Is that, or is it not, your verdict?" 31 *Ga.*, 661, "Did you consent to that verdict, and do you now consent?" is not substantially different from this form. An answer by a juror, to the effect that he *had* agreed to the verdict in the jury room, but that he did not think it was exactly right, should not be taken as committing him to the verdict absolutely. Assent in the jury room, where there is to be an immediate delivery into court, is not sufficient. It is necessary to abide by such assent and adhere to it until the verdict is no longer *in fieri*. When one or more of the jurors cannot face the parties and the public with the finding, there should be further deliberation.

Equity. Debtor and creditor. Husband and wife. Principal and agent. Deeds. Usury. Jury. Verdict. Before A. S. Giles, Esq., Judge *pro hac vice*. Houston Superior Court. November Term, 1877.

Mary McCallie died in October, 1871, leaving Amanda L. Murray, Henrietta C. Anneker, her sisters, and A. P. Anneker and J. S. Anneker, her brothers, all in South Carolina, her heirs at law, in possession of a plantation containing fifteen hundred and nineteen acres, in Houston county,

and a stock of mules and other personal property as usual on a farm. She died indebted to Campbell & Jones in five hundred and thirty-nine dollars and six cents for material and expenses furnished by them, who were factors, warehousemen and commission merchants, in Macon, Ga., for running the farm in the year 1871.

This plantation was a part of the estate of one Anneker, who lived and died in South Carolina previous to 1871, leaving these five persons—that is, Mrs. McCallie, Miss Anneker, Mrs. Murray and their two brothers, as his heirs at law.

After the death Mrs. McCallie, in the fall of 1871, under an agreement that Mrs. Murray and her sister, Miss Anneker, should take the plantation and property in Houston, and the two brothers the property in South Carolina, the estate of their father was divided.

Murray came from South Carolina and took possession of the plantation and property in Houston county for his wife and his sister. Finding the farm destitute of corn, meat, mules and other necessary material to make a crop for the year 1872, and having no means or credit of his own, after telling Campbell & Jones the condition of the property, they agreed to let him have money and supplies; and to secure them in such advances, the amount of Mrs. McCalle's debt, and to pay for some mules he had bargained for on that day, he drew his draft for a sum that, when discounted, would produce the amount of her debt, and another draft to pay for the mules, both of which Campbell & Jones accepted, and executed a mortgage on the undivided half of the plantation and property in Houston county.

In the spring of 1873, the farm having failed to pay, the parties came to a settlement, when Murray, his wife, and his sister, Miss Anneker, gave to Campbell & Jones, on the 11th of February, 1873, their three drafts to settle the amount due on the advances.

These drafts were drawn for such sums as, when discounted, would produce the exact sum that was due.

One of these drafts was for the sum of $770.30, due the 15th of September, 1873; one for $965.00, due the 1st of December, 1873, and the other for $826.00, due the 1st of November, 1873, all of which were accepted. On the 15th February, 1873, they made an absolute deed to Campbell & Jones for the express consideration of $2,600.00 for 1,100 acres of said plantation. This deed was made to secure these drafts, and when executed the prior mortgage was canceled and satisfied.

Under these circumstances, Mrs. Murray and Miss Anneker filed their bill against Campbell & Jones and Murray to set aside this deed on the alleged grounds that it was given to secure the debt of W. L. Murray; that its execution by complainants was obtained upon fraudulent representations of Murray, acting in so doing as the agent of Campbell & Jones, and by reason of his persuasions and his influence over his wife and sister-in-law, who lived in the house with him, the fraudulent representations being that she, Miss Anneker, should have more confidence in him than to fear the signing of said paper would deprive her sister of a home; that it was a mere securityship; that he would certainly pay the money in the fall, and that no injury would result to her or her sister, and she was not advised of the nature, legal effect or consequence of the paper; that the deed was tainted with usury; that at the time this deed was made they did not have the legal title. The deed from their brothers to them was made subsequent —that is, in March, 1873.

The answer of Campbell & Jones, after stating how complainants acquired title, and the indebtedness of Mrs. McCallie to them, alleged that they, complainants, in order to supersede the necessity of administration, agreed to assume the payment of said debt, which, with sums advanced to them from time to time, amounted in the aggregate to $2,487.21, all of which went for the use and benefit of said parties and their said estate. They admit the charges as to

the execution of the mortgage and the deed, but state that complainants were allowed to remain on the land with the distinct understanding that if they failed to discharge their indebtedness by the 1st of January last, they should yield possession, and the land should become absolutely and unconditionally the property of defendants; that complainants have failed either to pay the debt or to yield possession. They prayed that the possession of the land be delivered to them together with rents, etc.

By way of cross-bill, they prayed that if their title is not complete at law, the deed mentioned may be considered and treated as an equitable mortgage, and the same foreclosed; that they may have a general judgment against complainants and defendant Murray for the amount due them; also, for general relief.

In addition to the facts above stated, the evidence disclosed that in 1872 Murray conducted the plantation on his own account, and against the consent and protest of complainants; that they did not even know from whom he was obtaining the supplies with which to carry on his farming operations, though, if he had been successful, the profits would have enured to their benefit. That the deed was prepared in Macon and sent by Campbell & Jones to Murray, in Houston county, for execution; that Murray understood that in procuring the execution of the deed, he was acting as the agent of Campbell & Jones; that the deed was executed by complainants at the instance of Murray, under the circumstances detailed in the bill, and returned by him to the grantees. That cotton sufficient was turned over to Campbell & Jones to discharge the indebtedness contracted by Mrs. McCallie, and hence the entire amount of the present indebtedness was created for money, supplies, etc., used by Murray in conducting the planting interests, except $50.00 or $60.00, applied to his own use. That though the estate of Mrs. McCallie was divided as above indicated in the fall of 1871, yet formal deeds were

not passed between the heirs until March, 1873. That it was agreed between Murray and Campbell & Jones that the land was to be reconveyed on payment of the debt, though no formal bond to that effect was given. That there was usury in the indebtedness thus secured. That Miss Anneker was a member of Murray's family, and looked to him for protection ; that no one advised her in reference to the execution of the deed but Murray, and she had no opportunity to confer with counsel.

The jury returned the following verdict :

" We, the jury, find and decree that the debt for which the deed in controversy was executed, was the individual debt of defendant, W. S, Murray ; that in taking said deed the said W. S. Murray acted as the agent of Campbell & Jones ; that said debt was not made for the benefit of complainants, and that they did not ratify the acts of the said W. S. Murray when he executed the deed set up as a ratification of the actings and doings of said W. S. Murray in and about the creation of said debt.

" We further find that there was usury in the debt which the said deed was given to secure, and that Campbell & Jones got the benefit of said usury.

" That said deed, and the drafts which constitute the consideration for said deed, were executed and delivered prior to the nineteenth day of February, 1873, and that the said deed is void in consequence of the fraud, misrepresentation and undue influence of the said W. S. Murray, agent of Campbell & Jones, practiced upon and made to complainants at the time he procured the signatures of complainants to said deed."

The defendants, Campbell & Jones, moved for a new trial upon the following, among other grounds :

1. Because the verdict was contrary to the law and the evidence.

2. Because the court erred in charging as follows : " Were the drafts in question given to pay a debt of Murray, the husband ? If it was his debt his wife could not be

his security or make this deed for the payment of this debt, or to secure it."

3. Because the court erred in the following charge : " If you believe it was her debt then she could make a deed to secure it. If Murray was her agent to make the debt, she is bound by his acts. The mere fact of his being her agent does not imply authority to bind the *corpus* of the property."

4. Because the court erred in this charge : " If there were defects in the mortgage and they gave this deed to remedy such defects, it is a ratification, unless the deed is otherwise affected as charged in the bill."

5. Because the court erred in this part of the charge : " Did complainants own the land ? Was it their farm ? Did they know what Murray was doing in bringing supplies in for said farm from Campbell & Jones? If they did, they are bound for such debts so contracted, if they did not notify Campbell & Jones of their dissent before made."

6. Because the court erred in the following part of its charge : " If Murray and his wife were married since 13th December, 1866, then this land cannot be held subject to his debts."

7. Because the court erred in this part of its charge : " If Murray was Campbell & Jones' agent in procuring these drafts and this deed from his wife and her sister, a delivery of the deed to Murray was a delivery to Campbell & Jones. If delivered to him before the 19th of February, 1873, it does not come under the repeal of the usury laws, of that date."

8. Because the court erred in this part of its charge : " Was there usury in these notes (drafts) ? Did Campbell & Jones reserve more than lawful interest ? If they did they are bound by it ; that is, the deed in that case would be void, and they could not recover the land under it. If they received or reserved none this law does not apply to them, and they can recover if these parties are bound otherwise.

The date of the contract, that is the drafts, controls as to whether the deed is affected by usury or not."

9. Because the court erred in this part of its charge : " If they, Campbell & Jones, were accommodation acceptors and lent their credit to these drawers, they are not affected by the usury, although usury may be in the drafts, provided they neither received or agreed to receive any benefit therefrom."

10. Because the court erred in this charge : " If they, complainants, agreed to pay Campbell & Jones usury in these drafts, and the deed was made to secure them, then the deed is void."

11. Because the court erred in the following part of its charge : " Inquire whether Murray, the husband of one, and the brother-in-law of the other of the complainants, was Campbell & Jones' agent in procuring the execution of the deed. If he was, they, Campbell & Jones, are bound by what he said and did at that time in procuring the execution of the deed, and if he at that time, as such agent, used any undue influence, made any fraudulent representations by which they were induced to make the deed, then they are not bound by it. But mere persuasion is not undue influence."

12. Because the verdict was not the result of the free, full and voluntary assent of all the jurors trying the same, in this, that in polling the jury, when the name of P. W. Stubbs was called, the court asked him, " Is this your verdict ?" he replied, " I suppose so," or words to that effect. Then, upon suggestion of counsel for complainants, the court changed the form of the question to " Did you consent to that verdict, and do you now consent," without objection to the change on the part of respondents. The juror then said that he had agreed to the verdict in the jury-room, but he didn't think it was right; that he had been charged with making two mistrials, and he didn't wish to be the cause of another. Tharpe and Saules, when polled, also said that

they had agreed to the verdict, but didn't think it was exactly right.

The impression produced on the mind of the court was, that these three jurors had agreed to or given in very reluctantly to the verdict, and had very grave doubts as to its entire correctness.

Defendants therefore objected to said verdict being received and recorded, because it was not the unanimous verdict of said jury, and demanded that the jury be sent back to their room to make up a verdict under the law, which the court refused, but ordered the verdict to be delivered in the form in which it was returned and recorded, and it was done.

(This ground is modified in accordance with the qualification of the presiding judge.)

13. Because the verdict was contrary to equity.

The motion was overruled, and the defendants, Campbell & Jones, excepted.

WOOTEN & SIMMONS; R. F. LYON, for plaintiffs in error, cited, as to whether wife's or husband's debt, 9 *Ga.*, 223; 59 *Ib.*, 380. As to usury, 1 Story's Eq., §64, e, §§301–2. Verdict not unanimous, 31 *Ga.*, 660.

S. HALL; W. S. WALLACE; W. C. WINSLOW, for defendants, cited Code, §§1754, 1774, 1783, 1785; 59 *Ga.*, 254; 57 *Ib.*, 207; 54 *Ib.*, 543; 61 *Ib.*, 662; 56 *Ga.*, 47; 48 *Ib.*, 365; 28 *Ib.*, 525; 60 *Ib.*, 566. As to Miss Anneker's rights, Code, §§3173, 3175, 3177; DeCol. on Guaranty, 372–375; 14 C. B., 385; 17 *Ib.*, 482; 15 Sim., 437; 16 *Ib.*, 58; 27 *Ga.*, 457. As to usury, Code, §2025; 54 *Ga.*, 554; 55 *Ib.*, 412. Instrument cannot be held to be a mortgage, Code, §1969.

BLECKLEY, Justice.

1. A husband farms upon land belonging to his wife and

her sister, but without their consent and against their objection, intending the profits for their benefit. Does this entitle him to contract debts for advances and supplies to carry on the business, and bind them or their property for the payment of such debts? To ask the question is to answer it in the negative. 55 Penn., 386; 103 Mass., 560; 5 R. I., 376; 1 Coldw., 67. It does not appear that any profits were produced, or, if so, that they went to the ladies.

2. A conveyance of the wife's land to secure the husband's debt is simply void. Code, §1783.

3. But the wife's sister is left free by the law to assist her brother-in-law in his business, just as if she bore no relation to him whatever. If she is of full age, though she reside in his family and look to him for protection, she may become his surety, and may convey her land to his creditor to further secure the debt, and she will be bound, as any other person would be by like acts and engagements. Nor will any fraud or misrepresentation practiced upon her by the debtor affect the creditor, though the latter be incidentally benefited thereby, unless he participated in the same, or had notice of it.

4. In this case, it was sought to affect the creditors on the doctrine of agency; that is, by treating the debtor as the agent of the creditors in procuring the execution of the papers. The fraud committed by the debtor on his sister-in-law would thus, it was argued, be the fraud of the creditors, perpetrated through their agent. But in causing his sister-in-law to execute the papers, the debtor acted for himself, and not as the representative of his creditors. He desired indulgence upon his debt, and to obtain it, undertook to furnish the required security. The creditors had a right to dictate the terms on which they would grant indulgence, and to draft the very instruments which must be executed before it would be extended. To say that the debtor acted as their agent in complying with the conditions prescribed to him, would be to confound all the established distinctions between independent and representative action. The debtor

was his own principal, and the lady must be considered as having signed at his instance, and for his accommodation. Any other view of the matter would require us to regard the kindly offices of sureties as extended to creditors rather than to debtors.

5. On the question of usury, the deed is to be judged by the law as it existed at the time of execution. There was no intention to postpone delivery, and when the deed reached the hands of the creditors, it had effect from the time it bore date. The repeal of the usury laws in the interval, did not erase the taint. It is not necessary that the grantees in a deed should be actually present at the time a conveyance is executed. It may become completely operative though they never see it. In other words, there may be a virtual legal delivery to the absent. A delivery to the messenger or carrier by which it was transmitted, or intended to be transmitted, would be sufficient.

6. But though a deed be void for usury, why should it be canceled so long as the debt and lawful interest remain unpaid? The cancellation of a deed is equitable relief, not a legal remedy; and equity grants its relief against usury on terms. Whoever would have equity must do equity. 4 *Ga.*, 239, 240, 241; 9 *Ib.*, 137; 10 *Ib.*, 389; 1 Story's Eq., 64 *e*, 301; Tyler on Usury, 435, *et seq.* It is a mistake to suppose that because a usurious deed is not available as title, the maker can call for it at pleasure and have it canceled. Even if it be entirely worthless to the creditor, he has a right to hold it if he obtained it lawfully and without fraud. It is his property until the purpose for which it was given has been subserved, so far as that purpose is consistent with equity and good conscience. And what under the sun is more consistent with the best equity and the best conscience than for a creditor to receive his principal and lawful interest? Let him have these, and then let him be constrained to surrender or cancel his securities, be they real or only nominal.

7. On the mode of polling the jury, enough is said in the seventh head-note. There was no legal verdict. See 6 Johns., 68.

Judgment reversed.