No. 24.—GEORGE HARGRAVES, plaintiff in error, *vs.* FELIX LEWIS,·
defendant in error.

[1.] After a judgment of *severance,* either party may sue out a writ of error
without joining the other.

[2.] Where a decree, sought to be reviewed, appears on the record to have
been entered upon a voluntary settlement of the parties, a bill of review
will not lie, although the original decree be *irregular.*

[3.] A bill of review will not be entertained where it would be unjust and
unconscientious to disturb the *first* decree, or where the same result would
inevitably take place on a re-hearing.

[4.] An examination into the relative powers and province of the Court and
Jury in Equity causes, under the Constitution and Laws of Georgia.

[5.] What is the *limitation* in bringing bills of review in this State?    *Quere.*

[6.] Under our present system, will bills of review lie for errors apparent
upon the record ?    *Quere.*

In Equity, in Muscogee Superior Court.    Decided by Judge
ALEXANDER, May Term, 1849.

In the year 184—, Felix Lewis filed a bill in Equity in Musco-
gee Superior Court, making the following charges :

That in 1830, he borrowed of George Hargraves $3000, at the
usurious rate of 14⅓ per cent. per year; that after several annual
renewals at the same per cent. being about to move to Missis-
sippi, at the suggestion and request of Hargraves, complainant
procured his father and brother, who had been his sureties, to
make their joint note in renewal of his, and procured the indorse-
ment of William L. Wynn to the same—complainant being all
the while the real debtor ; that, by renewals at the same usurious
rate of interest, the note finally amounted to $10,500, upon which
Hargraves had commenced suit and obtained judgment against
William L. Wynn. The bill charged collusion between Wynn
and Hargraves, and that Wynn was about to be forced to pay the
debt, and would then seek to recover the amount from complain-
ant, Lewis. Accompanying the bill, the original amount loaned,
with lawful interest thereon, was tendered and deposited in the
Clerk's office. The prayer was for a perpetual injunction of the
judgment against Wynn.

Hargraves answered the bill, admitting the loan and usury, and

the renewals; but denied that the change of the note from Felix Lewis, and the taking of the note of his father and brother, was at his request, and alleged, that since the change, he had never looked to Felix Lewis as his debtor. He denied all collusion with Wynn, who never answered the bill.

Before the return day of the bill, Hargraves moved to dissolve the injunction; which motion Judge *Sturgis*, then presiding, refused, and granted the following order:

" FELIX LEWIS

  *vs.*  } *Bill for discovery, &c.*

GEORGE HARGRAVES and WM. L. WYNN.

" In the above case the sum of $6,500 having been tendered in satisfaction of the judgment in favor of *Hargraves vs. Wynn*, and the said sum having been deposited in the hands of the Clerk, *It is Ordered*, that the same be paid to the attorneys of Hargraves in full payment of said judgment, unless the Court should decide that the complainant is bound to pay an additional sum as interest upon interest."

On the 6th September, 1844, and before the appearance term of the bill, the presiding Judge passed another order, notifying the attorneys of the parties, that " the settlement heretofore made will be final and conclusive," the Court declining to allow compound interest.

At the appearance term, the following order was passed and entered on the minutes:

" FELIX LEWIS

  *vs.*  } *Bill for injunction.*

GEORGE HARGRAVES and WM. L. WYNN.

" The Court having sustained the bill, and the party defendant having accepted the money tendered, *Ordered*, that the said bill be sustained and the injunction dissolved."

At May Term, 1846, a *rule nisi* was granted, at the instance of Hargraves, " to speed the cause." The complainant showed for cause, that the case had been finally disposed of by the foregoing orders.

Upon argument, the Court discharged the rule, and that decision, on writ of error, was affirmed in the Supreme Court. See 3 *Kelly's Reports*, 162.

In 1848, a bill was filed in the names of Hargraves and Wynn,

to review and reverse the former decree for error on the face thereof.

At November Term, 1848, Wynn moved to have his name stricken out and he be discharged from the bill, which motion was granted, and on appeal to the Supreme Court, this decision was reversed, and a judgment of *severance* ordered to be entered in lieu of the judgment striking Wynn out of the bill. See 6 *Ga. Rep.* 207.

After the judgment of severance, Wynn, by leave of the Court, filed an amendment to the bill of review so far as he was concerned, by which he charged, that the bill had been filed without his knowledge or consent, and from a fraudulent combination between Hargraves and Lewis, to defraud him, and upon an agreement to divide whatever amount might be recovered; that the facts stated in the original bill by Lewis against himself and Hargraves were all true; that at the time of the hearing of the motion to dissolve the injunction, it was upon the proposition of Hargraves, distinctly agreed by all the parties, that Hargraves should accept the sum of money tendered in the bill, in full satisfaction of the debt, unless the Judge, upon farther consideration, should allow the claim of Hargraves of interest upon interest after each renewal; his decision upon this question, by request of the parties, to be delivered as early as practicable ; that a Jury trial in the cause was expressly waived by all the parties, and by agreement also, nothing was to go upon the minutes except the order as it now appears. The amended bill prayed that the former decree might be affirmed in every particular.

To this bill, both before and after the amendment was made, a demurrer was filed on several grounds, viz :.

1. That there was no equity in the bill.

2. That it was barred by the lapse of time.

3. That there was nothing in the bill showing a right to a decree against Lewis.

4. That Hargraves seeks to be permitted to enforce the collection of a judgment at law, more than half of which is usurious, without offering to do equity by relinquishing all of it over and above the principal and lawful interest.

5. Because the bill seeks discovery in support of a claim founded upon repeated, deliberate and wilful violations of public policy and public law.

6. Because the bill, since its amendment, is irregular in its frame, and the relief prayed by the complainants inconsistent.

7. Because the complainants are misjoined, nor can either have any decree against the defendant.

Lewis, by his counsel, also filed three several pleas in bar of the discovery and relief sought by the bill.

The first plea sets forth the original bill, with the proceedings and several orders passed thereon, and alleging that it was apparent from the record, that the final order or decree in said cause was passed after a full and final settlement and agreement between all the parties, and the money tendered was accepted in full satisfaction of the judgment.

The second plea set out the judgment and final order in the original bill, and pleaded the same in bar of this proceeding.

The third plea was of the judgment of the Supreme Court, affirming the decision of the Superior Court, refusing the rule " to speed the cause," on the application of Hargraves.

By order of the Court, the demurrer and the sufficiency of the pleas were heard together.

The Court sustained the demurrer, and ordered the bill to be dismissed, and at the same time ruled that the first plea was sufficient, and the second and third pleas insufficient.

To which decisions of the Court, sustaining the demurrer and the sufficiency of the first plea, the counsel for Hargraves excepted.

After the decision of the Court upon the pleas, counsel for Lewis asked leave to withdraw the second and third pleas without prejudice; which leave was granted by the Court, and Hargraves excepted.

Upon these exceptions Hargraves sued out a writ of error, without joining Wynn, either as party plaintiff or defendant.

In the Supreme Court, a motion was made to dismiss the writ for the non-joinder of parties. By agreement, this motion and the errors assigned were argued together.

JOHNSON & WILLIAMS and H. HOLT, for plaintiff in error.

JONES, BENNING & JONES, and COLQUITT & WELLBORN, for defendants.

Brief of JOHNSON, for plaintiff in error.

The pleas should not have been withdrawn, because the judgment on them was final and conclusive.   7 *Porter's Rep.* 420.   3 *Denio*, 238.

The first plea is insufficient, because it is not verified.   *Story's Eq. P.* §696.   *Cooper's Eq. P.* 231, '32.   *Daniel's Chan. P.* 212.

The Court erred in sustaining the demurrer.   The bill is not barred by the Statute of Limitations.   4 *Howard*, 561.   *Story's Eq. P.* §410.   10 *Vesey*, 467.   10 *Wheaton*, 746.

The decree sought to be reversed is final.   6 *Howard*, 201.

And it is also erroneous.   9 *Ala. Rep. Byrd vs. Odum*, 755.   1 *Kelly*, 150.

H. L. BENNING submitted the following points and authorities for the defendant in error.

### THE TWO DEMURRERS.

I. The decree or order sought to be reviewed, whether it be considered as resting on *the facts of the case* or on *a settlement* between the parties, contained no *error*.

1. As to its resting on the facts of the case.   " The receipt of a promissory note of the maker, or of a third person, *will be deemed* a *conditional* satisfaction or extinguishment *only* of the original debt or note of the maker, (that is, if the substituted note so received is not regularly paid,) unless *otherwise agreed* between the parties." *Story's Prom. Notes*, §404.

2. It was *not agreed* between the parties, that the substituted note in this case should be absolute payment.

3. The substituted note *was not paid* at maturity, but again and again *renewed*.

4. These renewals were made with the *consent* of Lewis, and therefore, furnish no cause of imputing *laches* to Hargraves, such laches as would make the substituted note, in its successive forms, his own.   *Story P. Notes*, §405.

5. Therefore, the *relationship of creditor and debtor* between Hargraves and Lewis, *was not extinguished* at the time of *the tender* of payment by the latter to the former, and, therefore, Lewis was a person who might well make the tender.

6. The sum tendered was the principal and *legal interest ; more*

by the amount of the interest, than Hargraves was entitled to—our Statute being the rule. *Prince*, 295. And certainly as much as *Equity* could require for a compliance with the rule, that one must do equity before he asks equity. *Story's Equity*, §301. 1 *Kelly*, 416, 406, 135.

7. The refusal of the tender by Hargraves was a discharge of Wynn, the surety, because the undertaking of a surety is to pay only in case the principal *makes default*, (3 *Kelly*, 248) and for other reasons. *Theobald on Prin. and Surety*, 143, 147, 154.

If Hargraves had *accepted* the tender, in satisfaction of the debt, all must admit it would have been a discharge of Wynn. Granting that Lewis had the *right to make* the tender—the *refusal* to accept it must be considered the same thing as regards Wynn—he being only surety.

8. The fact that the debt was in judgment against Wynn, the surety, made no difference, because the relationship of principal and surety continues after judgment. 3 *Kelly*, 250. *Ib.* 412.

9. Nor did the fact, that the amount of the judgment against the surety *was larger* than the sum tendered by the principal. It must, from necessity, frequently happen that a *principal* can prove a plea of usury when *the surety* cannot. The latter is always a *competent witness* for the former—the former never for the latter. It follows, that if both are sued in separate actions, the amount of the recoveries may vary. Yet there can be, in fact, but one debt, and the discharge of that must be a discharge of both of such judgments. *Tarver vs. Rankin*, 3 *Kelly*, 214, 215.

So much for the privity between Lewis and Hargraves, and the rights and liabilities growing out of it. But there was also a *continuing privity* between Lewis and the parties, including Wynn, on the substituted note. The arrangement for the substitution and the different renewals afterwards, were, as he admits in his bill, made with his knowledge and approbation; that is to say, the *relationship* of *principal and surety* continued between Lewis and Wynn, after Lewis' name was dropped from the transactions.

10. Now, the contract between a principal and a surety, implies a *request dating from the very commencement of the relationship*, on the part of the principal, that in case of his own default, the *surety will pay the amount* to be paid—the amount specified in the note or other security; and an undertaking that the principal will *indemnify* him for so doing.

11. If, then, a surety pays a note, whether tainted with usury or other illegality or not, he does it at the *request* of the principal; and doing so at such *request*, an action will lie in his favor against the latter, for money *paid to his use.* Arch. Nisi Prius, 171, 172. 1 *Kelly*, 155. Suppose the contract of the principal is without' consideration, or within the Statute of Frauds, or obtained by fraud, and the security pays it, is he without recourse on his principal? Yet the principal is not bound on the contract.

12. Therefore, Wynn, upon the payment of the judgment, would have had his action against Lewis for money paid to his use for the *whole amount* of the judgment.

13. And, therefore, not to have let Lewis come into Equity, and on the terms of a tender of principal and legal interest, prevent such payment, would have been to have compelled him in effect to do what the law protected him from doing—to pay the usury.

14. There were *no facts in dispute* in the case—no *issue of fact.* The whole case was before the Court upon bill and answer, *without replication.* Therefore, there was nothing for *a Jury* to try..

15. That the decree was made before Wynn answered, and made at the first term, was not such an error, if error at all, as to warrant a bill of review. No objection was made to the decree by Hargraves at the time, on those grounds. *Story's Eq. Pl.* §411. And besides, *Hargraves* was not aggrieved by those particular errors. *Ib.* §409.

II. As to the decree or orders resting on a *settlement*:

1. It purports to do so on its face.

2. This Court have determined that it does. 3 *Kelly*, 169.

3. It is impossible, in the nature of things, that error *could be* committed by a Court in recognising and affirming a settlement made by the parties to a cause—such error as *either of them* could complain of.

III. A bill of review was barred by the lapse of time. *Story's Equity Pl.* §§410, 635. 10 *Wheat.* 146.

IV. 1. There is no privity between plaintiffs and defendant. *Story's Eq. Pl.* §73.

2. And no decree is, or could be, prayed for against the defendant. *Story's Eq. Pl.* §§231, 232, 234.

V. 1. The complainant Hargraves does not offer to *do equity.* 1 *Danl. Ch. Pr.* 497, 498. *Story's Eq.* §§300, 301.

Hargraves *vs.* Lewis.

2. But, on the contrary, seeks the aid of a Court of Equity to enable him to trample under foot a positive Statute; one passed to subserve a policy, not only sanctioned by all nations in all ages, but, in at least one instance, directly dictated by the very mouth of God. *Story's Eq.* §§300, 301, 303. 3 *Kelly*, 177, 181, 182.

3. A bill which is irregular in its frame, and contrary to the usual course of a Court of Equity—which is brought by two plaintiffs, setting forth two opposite and repugnant cases, followed by opposite and repugnant prayers for relief, will be dismissed on demurrer. *Story's Eq. Pl.* §§642, 643, 510, 509, 279. 1 *Dan. Ch. Pr.* 327, 329.

4. Persons claiming under titles inconsistent with each other, cannot be joined as plaintiffs. *Danl's Ch. Pr.* 327, 328. *Cholmondeley vs. Clinton*, 2 *Jac. & Walk.* 135, 136. *Story's Eq. Pl.* §279.

5. Refusing to allow such a misjoinder would not be a denial of justice, because, either party wishing to sue, might accomplish his object by making the other a defendant. 2 *Jac. & Wal.* 135, 136. *Story's Eq. Pl.* §359. *Ib.* §369. 11 *Ves.* 306. 3 *Dan. Ch. Pr.* 210, 211.

6. The plaintiffs, notwithstanding the order of severance, are still *both* in the same bill. Because, 1st, Wynn has been permitted, since that order, to amend the bill, and *no exception* was taken to it. 2d. Because this Court decided, in this same case at Talbotton, that Wynn could not be *dismissed from* the case. 3d. Because a severance in such a case as this must be different from a severance in a writ of error. 6 *Ga. Rep.* 210. *Tidd's Practice*, 1135, 1136.

### THE PLEAS.

1. The *first plea*, being merely a plea of the final decree or order of the Court in the same case, was one which might be pleaded as a mere matter of course. *Story's Eq. Pl.* §634. And was a good plea in bar. 3 *Kelly*, 169. 6 *Ga. Rep.* 209.

2. And it needed no verification by the affidavit of the defendant. 2 *Danl's Ch. Pr.* 211. *Lord Redesdale*, 243.

3. The order for leave to withdraw the second and third pleas, was one within the power of the Court. 2 *Danl's Ch. Pr.* 231, 232.

The Court not being unanimous in their decision, delivered their opinions *seriatim*.

*By the Court.*—Lumpkin, J.

[1.] We cannot sustain the motion to dismiss this writ of error on account of the non-joinder of Wynn with Hargraves as co-plaintiff. A severance having taken place between these parties in the Court below, from that time each must be considered as litigating separately. And I gladly avail myself of the opportunity thus afforded, to correct, *so far as I am concerned,* the views expressed by the Court when this case was before us in another form at Talbotton. (6 *Ga. Rep.* 207.) We there held, that the parties to a bill of review must stand in the same relative position which they occupied towards each other in the original cause, and that one could not be made defendant to a bill of review filed by a co-defendant. I am satisfied that my first impression was wrong as to the Chancery practice in this particular; and in the absence of authority I was misled by analogizing bills of review too strictly to writs of error. It is true that all the parties to the original bill, whose interest would be affected by the reversal of the former decree, must be before the Court in the bill of review. But it does not follow, neither is it true, that they must come into Court in the same character of complainants and defendants. It may be brought by either or any of the parties to the original bill alone, or it may be filed by a person not a party to the original decree, but whose rights are injured by it. Nay, it lies at the instance of the party who obtained the original decree in his favor, if the original decree is prejudicial to him. *Story's Eq. Pl. tit. Bills of Review.* 1 *Bland's Ch. Rep.* 122. 5 *Mason's Rep.* 303. And so far from there being any impropriety in changing the position of the parties, it is certain that Wynn could not have united with Hargraves in this bill of review, for the obvious reason that he was not aggrieved by the errors complained of. He should have been made a defendant to the bill.

Having thus put myself right on this matter, we will proceed to examine, with all possible brevity, the merits of this case; and passing by all the other points presented in the record, I shall confine myself entirely to the consideration of the main question, namely : whether or not the demurrer to the bill of review should have been sustained. I hold that it ought, and for the following reasons :

Hargraves *vs.* Lewis.

[2.] 1st. If a decree has been taken by consent, a bill of review will not lie against it, upon the maxim, *consensus tollit errorem.* 2 *Smith's Ch. Pr.* 50. *Downing vs. Cage, Eq. Ca. Abr.* 165. *Todder vs. Sansam,* 1 *Bro. Par. Cas. ed. Toml.* 468. *Harrison vs. Rumsey,* 2 *Vesey,* 488. *Bradish vs. Gee,* 1 *Amb.* 229. *Webb vs. Webb,* 3 *Swanst.* 658.

The case in *Swanston* is short, and as it bears a striking resemblance to the one at bar, I will quote the whole of it. It was between father and son. The son had formerly exhibited a bill against his father, to have an account of personal estate, and also of the prebend of North Grantham, where his father was a trustee for him. At the hearing the son proved his case. The Master of the Rolls, who heard it, meditated an agreement, which produced a consent that the father should convey to the son, and the son should pay the father £50 per annum, and release to his father all account of the arrears, and of the personal estate. Both subscribed their consent to the minutes, and thereupon a reconciliation was made, and a blessing asked and given in open Court. And after all this the father brought a bill of review to reverse the decision. The Chancellor immediately dismissed the bill, and would hear no more of it, upon the ground that there can be no error or injustice of which the Courts will take cognizance in a decree by consent—*volenti non fit injuria.*

Let us now apply the principle thus illustrated to the case under discussion.

In 1830, Felix Lewis borrowed of George Hargraves $3000, at the usurious rate of about 14⅜ per cent. interest per annum. The debt was renewed from time to time upon the same terms, until it amounted to $10,500. Hargraves sued Wm. L. Wynn, one of the parties to the last note given, and obtained judgment against him for the whole amount of the debt. Lewis, the borrower, filed his bill against Hargraves and Wynn, charging collusion between them, and expressing the fear that if Wynn paid this judgment, he would have recourse over against him for reimbursement. He tendered to Hargraves the original sum loaned, with lawful interest thereon, and upon his refusal to receive it, he deposited the money in the Clerk's office, and prayed a perpetual injunction against the judgment as to the residue. Hargraves answered the bill and admitted the loan, usury, renewals, &c. Wynn failed or refused to answer.

Hargraves *vs.* Lewis.

At the coming in of the answer, and before the return day, Hargraves moved to dissolve the injunction, which motion Judge *Sturgis* then presiding refused.    At the same time he passed the following order:

FELIX LEWIS,
        *vs.*                        } *Bill for discovery.*
GEORGE HARGRAVES and WM. L. WYNN.

In the above case the sum of six thousand five hundred dollars having been tendered *in satisfaction of the judgment* in favor of Hargraves and Wynn, and the same sum having been deposited in the hands of the Clerk : *It is Ordered,* that the same be paid to the attorneys of George Hargraves, *in full payment of said judgment,* unless the Court should decide that the complainant is bound to pay an additional sum as interest upon interest.

Subsequently at Chambers, and before the appearance term of the bill, the Judge passed the following order :

FELIX LEWIS,
        *vs.*                        } *In Equity.*
GEORGE HARGRAVES and WM. L. WYNN.

The attorneys in the above case are hereby notified, that the settlement heretofore made, will be final and conclusive, as I cannot allow the claim of compound interest, on the ground that Equity only looks to the original loan, and requires interest thereon from its date.    All the subsequent agreements by way of renewals, were not legal contracts, and are not cognizable in Equity, Equity only looking back to the original transaction.

At the term of the Court following this order, it being the first term after the filing the bill, the following order was taken and entered on the minutes, and appears there of record :

FELIX LEWIS,
        *vs.*                        } *Bill for injunction.*
GEORGE HARGRAVES and WM. L. WYNN.

The Court having sustained the bill, and the party defendant *having accepted the money tendered, Ordered,* that the said bill be sustained, and the injunction made perpetual.

Conceding, now, that all the foregoing orders were a nullity, and that the final decree, making the injunction perpetual, on account of its being made at the appearance term, and by the Judge alone, without the intervention of a Jury, I ask, do not the facts which they disclose show, conclusively, a *settlement* of the case by

Hargraves *vs.* Lewis.

*the parties?* Such was the judgment of this Court in *Hargraves and another vs. Lewis*, (3 *Kelly*, 169,) and such is the just, I had almost said inevitable, conclusion from these entries. And it will not do to say, that this testimony only goes to prove that Hargraves *received* the $6,500, or so much of his claim admitted to be due, without prejudice as to the balance. The evidence is, that the $6,500 *was tendered in satisfaction of his judgment against Wynn;* that it was ordered by the Court to be paid to his counsel, *in full discharge of said judgment*, and that Hargraves *accepted* the amount thus tendered. Not that he took it as of right, or *in invitum*, as against his will and under duress of law, but willingly and of his own accord, upon consultation with his attorneys, under the opinion of the Judge as to what was legally and equitably due him.

Such being the case, he cannot disturb the settlement, and if errors were committed, they were cured by the voluntary adjustment of the controversy; and the order making the injunction perpetual was wholly nugatory—it was an act of supererogation. The judgment against Wynn being satisfied, the execution to enforce it was at an end, and it would be idle to sanction a bill of review to rectify this decree. For,

[3.] 2dly. A bill of review will not be entertained where the complainant cannot be benefited by the reversal or modification of the former decree. *Webb vs. Pell*, 3 *Paige's Rep.* 368. In this case Chancellor *Walworth* expressed serious doubts, whether the decree sought to be reviewed could be sustained in its present form; and yet he refused to re-open it, because, among other reasons, no good could result to the party from a re-hearing. Now, if the construction be correct which we have put upon the testimony transcribed from the minutes of the Court, to wit: that it demonstrates that the litigation was terminated by the voluntary agreement of the parties, what would it profit the complainant to obtain a reversal of the order perpetually enjoining his judgment against Wynn, the judgment itself being satisfied? It would be a contest about *"goat's* wool." Error in matter of form only, although apparent on the face of a decree, seems not to have been considered, says Judge *Story*, as a sufficient ground for reversing a decree. · *Eq. Pl.* §411.

3dly. It is a well settled doctrine, that a bill of review will not lie where the original bill contains no equity. *Todd vs. Lackey*,

1 *Litt.* 271. In other words, Courts will look through the original case, to see whether or not it is proper to interfere. If, in the present case, the application had proceeded from Lewis, and upon examination of the record, it should be found there was no equity in his *first* bill, a bill of review would not be granted him. Will not the Courts, in meting out equal justice, look to the record to see what equity Mr. Hargraves has to entitle him to the aid of a Court of conscience?

Even Courts of Law, notwithstanding a misdirection, will not grant a new trial against justice and honesty; and especially if it ought to produce the same result. And it is a mistake, we apprehend, to suppose that Courts, either of Law or of Equity, have no discretion when thus appealed to. An application for a new trial at Law, or a bill of review in Equity, is always addressed to the sound judicial discretion of the Court; and it will exercise that discretion in such a manner as will best answer the ends of justice. And it will not do to hold that no matter in which forum he is presiding, he is to examine merely whether or not error has been committed. And I hold it to be an axiom, that a cause will not be directed to be re-tried on a mere technical objection.

In *Coffee vs. Rowlands,* (2 *Meeson and Welsby,* 149,) *Parke,* Baron, delivering the judgment of the Court, says, "it is perfectly settled, that where the contract which the plaintiff seeks to enforce, be it express or implied, is expressly or by implication forbidden by the Common or Statute Law, no Court will lend its assistance to give it effect."

The leading case on this subject is that of the *Duchess of Mazarine,* (2 *Salk. R.* 646,) where the verdict was admitted to be against law, yet the Court there held that, as the justice and conscience of the case were clearly with the verdict, it would not interpose. So in *Alsop vs. Magill,* (4 *Day,* 42,) the Supreme Court of Connecticut say, "whether the charge of the Court was perfectly correct in point of law, it is unnecessary to determine. Justice is done, and a new trial ought not to be granted." See also 2 *Term Rep.* 4. 1 *Bos. & Pul.* 338, *in notis.* 6 *Taunt.* 336. 5 *Mass. R.* 1. 7 *Greenl'f,* 442. 2 *Pick.* 310. Indeed Courts hold, uniformly, but one language upon this subject. Such have been the constant adjudications of this tribunal; that is, that we would look through the record to satisfy ourselves what direction to give to the cause; and that we would never remand it for a

Hargraves *vs.* Lewis.

re-hearing, where complete and substantial justice has been done, or where we are satisfied that, on a second trial, the same verdict must be given, although there might have been some misdirection by the Judge at the trial, as to the law. Will Courts of Equity be less scrupulous than Courts of Law, in granting new trials?

It does not require much penetration to see what the ends of justice require in the present case. It is admitted by the complainant, Hargraves, in his sworn answer to the bill filed by Lewis, that he has long since received every dollar of his original loan, with lawful interest thereon. And what is it he seeks at our hands? He complains that, by an irregular and illegal decree of the Circuit Court, he has been restrained from collecting some $4,000 of usury, besides a large amount of accruing interest; and he prays the interposition of this Court to unchain his judgment, that he may enforce the payment of this unconscientious demand! To my mind this is a most extraordinary application! And it would be still more strange, were it to receive the countenance of a Court of Chancery. I care not what errors are apparent on the record; for myself I do not feel at liberty to listen to such a petition, especially when every order and decision of the Judge who presided in the original cause, as to the terms upon which this usurious transaction should be settled, meets my most unqualified approbation.

Can a case be found where a party has obtained the aid of a Court of Chancery to compel the payment of usury? On the contrary, is not the principle to be found scattered broad-cast through all the elementary works and reported cases, that Equity will refuse any assistance to the usurious lender seeking to coerce compliance from the debtor? I had thought that if there was anything certain in jurisprudence, it was that Equity would not assist a wrong-doer, who attempts to make the Court the means of carrying into effect a transaction manifestly wrong and illegal; one condemned by the wisest statesmen and most profound jurists in every enlightened nation, ancient and modern, and in the bold language of the eloquent counsel, by the voice of Deity himself.

The loan of money, says Chancellor *Kent*, creates the interesting relation of *debtor* and *creditor*, which has, in all ages of the world, produced fearful consequences; and to preserve the laws of justice in that relation has, hitherto, required the utmost sagacity on the part of Government, and the greatest wisdom and

firmness in the administration of justice. He adds, " I consider the laws against usury to be a check to hard-hearted avarice, and a protection thrown around the necessitous." He further declared that he should apprehend dangerous effects upon the public morals, if creditors were at liberty to demand what rate of interest they pleased, without being under any admonition of human laws. Accordingly, he decreed that if the lender of money at usury seeks. to enforce any of his securities, and the borrower sets up the defence of usury, which is proved, the securities will be declared void, and be ordered to be delivered up and cancelled. 3 *John. Ch. R.* 399. 5 *Ib.* 135. "And nothing is clearer to my mind," said that very able lawyer and statesman, Lord *Redesdale*, " than that the statutes against usury ought to be strictly enforced."

The Court of Appeals in Kentucky held, that if a mortgagee file a bill to foreclose a mortgage to secure a usurious loan, the bill will be dismissed whenever the fact is made to appear. *Richardson vs. Brown*, 3 *Bibb's Rep.* 207.

And why should we relax the rules which discountenance this practice, when our people are just beginning to reap the rich benefits resulting from its suppression ? We should rather uphold with a steady hand, in all its length and breadth, the policy of our laws against usury. It is imparting a new spring to the agriculture, manufactures and internal improvements of our State. It is contributing, among other things, to rescue our citizens from the necessity of emigrating, by finding profitable employment at home. It is covering our waste places with plenty and prosperity. It is furnishing our mechanics with the means of maintaining their families, and educating their children; and soon, if persevered in, it will intersect every section of the State with a railroad, and cause the machinery of the cotton, as well as every other species of factory, to clatter upon every water-fall and in every neighborhood in Georgia.

We are constrained, therefore, by the highest public considerations, to turn a deaf ear to this complainant, however venerable for age, intelligence and private worth.

Nor does the fact that his contract has been reduced to judgment, change the principle. Having this advantage at law, he had a right to use it. But finding his hands tied, when he invokes our aid to turn his judgment loose, confessedly for usury, and

nothing else, the same rule applies that appertained to the original contract. And such was the opinion of the Court in *Nisbet vs. Walker*, 4 *Ga. Rep.* 221. We there decided that if a *judgment creditor*, upon a usurious contract, comes into a Court of Equity, seeking to have his debt satisfied out of money arising from the sale of the defendant's property, upon which he had a lien at law, that the judgment should be displaced for the usury, and stand only against the fund for the principal and interest due on the original loan. We propose only to apply the same rule to the present case. Here the record discloses that the creditor has secured every dollar of the principal, with legal interest due on the original loan ; and believing that he has got all that he is entitled to in equity, we refuse our assistance, notwithstanding he is a *judgment creditor*.

[4.] In the discussion of this question, I have yielded throughout, ✕ *ex gratia*, that the Judge had no right to pass the order perpetually enjoining the execution against Wynn, without the intervention of a Jury. I must, however, in justice to myself, " define my position" upon this subject. And it is this : that the Judge and Jury occupy precisely the same relative position in Equity causes that they do in cases at Common Law. Their respective province and powers are in no wise different. Whatever the Judge could do in one forum, when the acts are admitted, he can do in the other. And the idea that the Judge has the right to mingle with the Jury in their deliberations in their room upon the merits, and they, in their turn, consult and pronounce with him upon the law, in Equity causes, I hold to be a fallacy, unwarranted by anything in the Constitution and Laws of the State.

The 16th section of the Judiciary Act of 1792, vests the Superior Court with Equity powers in certain cases, until the case is set down for trial, which shall then be submitted, *with the evidence*, to a special Jury, who shall give their verdict on the same. *Watk. Digest*, 480. The Act of 1792 was repealed by the Act of 1797, which, however, contained the same provision, and in the very same words. *Watk. Digest*, 692. The Judiciary Act of 1799, now in force, repealed the Act of 1797, from the 1st to the 67th clause, inclusive. The 53d section of the Act of 1799 declares, that the Superior Courts shall exercise the powers of a Court of Equity in all cases where a Common Law remedy is not adequate, &c; and the proceedings, in all such cases, shall

be by bill and such other proceedings as are usual in such cases, until the setting down of the cause for trial.   At this stage, according to the provisions of the two previous Acts of 1792 and 1797, the proceedings usual in Chancery were modified, and instead of an investigation by the Chancellor, or a Master in Chancery, or by referring the facts to a Court of Law, the trial of the merits upon the testimony was to be had by a Jury.   And this was the trial by Jury, *heretofore used* in Equity causes, which was adopted by the 5th section of the 4th article of the Constitution of 1798.

And where, I respectfully repeat, is the pretext for maintaining that the *Law powers* of the Court are restricted or curtailed, or those of the Jury enlarged in Equity, any more than in appeal or Common Law cases?   There is no foundation for this hypothesis, unless it be based upon the Constitution of 1777, which made the Jury the judges of *the Law,* as well as of *the fact,* in *all* cases, *civil* and *criminal.*

[5.] We have refrained intentionally from expressing any opinion as to the time within which bills of review should be brought. The doctrine of all the Courts in England and in this country is, that a bill of review for errors apparent on the face of the record, will not lie after the time when a writ of error could be brought.   Courts of Equity govern themselves, in this particular, by the analogy of the Common Law in regard to writs of error. Hence, in England, where writs of error must be brought in twenty years after a judgment, unless in certain cases of disabilities, the like limitation is adopted in Courts of Equity as to bills of review for errors apparent on the face of decrees.   For the same reason, in the Courts of the United States, bills of review for errors apparent on the face of decrees, are limited to five years—that being the limitation of writs of error upon judgments at Law.

In Georgia, before the amendment of the Constitution, calling this Court into being, we had no writs of error to which to analogise bills of review; and now writs of error must be brought within thirty days after the adjournment of the Court, at which the cause was tried.   Is not this a case requiring Legislative interference?

[6.] There is, in connection with this point, another matter worthy of consideration : Under our present system, will a bill of review lie for errors apparent upon the record ?   See *Haskell and*

*others vs. Raoul and wife*, 1 *McCord's Ch. Rep.* 22.    *Perkins vs. Lang*, *Ib. in note.*    *Manigault vs. Deas*, 1 *Bailey's Eq.* 283.

The view we have taken of this case being in accordance with the ruling of the Circuit Court, we need only· add that the judgment is affirmed.

---

NISBET, J. concurring.'

The facts of this case are stated in the opinion of my brother LUMPKIN, to which I refer.  A great many questions were discussed at this bar, on the hearing of this cause, to which I shall not advert.  I shall briefly discuss that upon which it seems to be conceded the judgment must turn.  Whether the plaintiff in the bill ought to fail, on the ground that he comes into Equity to enforce the collection of usurious interest, may be a very serious question.  Believing that the judgment below ought to be affirmed upon grounds wholly independent of it, I feel myself free to omit its discussion—leaving that work to my brother LUMPKIN, if he sees proper to encounter it.

[2.] Bills of review are founded either upon errors of law, in the decree sought to be reviewed, or upon the discovery of new matters of fact.

This bill goes upon the first ground.    It charges error in law,· in the decree originally made by Judge *Sturgis*, at the first term of the cause of *Felix Lewis vs. George Hargraves and William Wynn*.   That order is in these words : " The Court having sustained the bill, and the party defendant having accepted the money tendered, *Ordered*, that the said bill be sustained, and the injunction made perpetual."

If this be an order of the Court, wholly independent of any settlement of the cause by the parties out of Court, my own opinion is, that it is subject to review.   If, however, it is to be taken as the evidence of a voluntary settlement between the parties, or to change the phraseology, if it is an order or judgment of the Court, founded on the act of the parties, it is not subject to review.   If the latter, it is admitted by counsel for the complainant, not to be subject to review ; for, however such a settlement might be opened, in a proper case made in Chancery, it cannot be

reached by a bill of review.    The complainant is estopped from a review of his own act.    A review for error in law must be founded on a judgment of the Court.    To this issue, then, this cause is narrowed·: was the order in question founded on a settlement made by the parties ?    Were this question an open one, I should rule that it was.    But in the view which I have taken of this whole case, I am well satisfied that this is not an open question.    It is settled by the judgment of this Court in the case of *Hargraves and another vs. Lewis,* reported in 3 *Kelly,* 162.

That was a case which came before this Court on a bill of exceptions and writ of error, taken to a decision of the Circuit Court, on the character and effect of the order in question.    The parties then before this Court, were the parties to the bill now sought to be reviewed.    Hargraves and Wynn, the original complainants to the present bill of review, and Felix Lewis, the defendant, were all before this Court in that case, and were heard.    The decision then made on that order, was on the same subject matter, and between the same parties now before us. That order must be, therefore, *res adjudicata,* between the parties.    It is desirable, however, to be more particular as to the manner in which the question came up in the case in 3 *Kelly,* in order to understand distinctly what was decided in that case, and in order to determine whether the decision covers the question now before us.    The original bill was filed by Felix Lewis against Hargraves and Wynn, to enjoin the collection of usurious interest charged to be embraced in a judgment which Hargraves had obtained against Wynn.    That bill charged that the note upon which that judgment was founded, and upon which Wynn was indorser, was taken by Hargraves in lieu of a note made by the complainant Lewis; that his (Lewis' note, and those of which *it* was a renewal,) was given to Hargraves for the loan of a sum of money at usurious interest; that he (Lewis) was the principal debtor to Hargraves; that Wynn had fraudulently combined with Hargraves, and confessed the judgment for principal, lawful and usurious interest, in order to force him to pay it; that if Wynn, who was only a surety on the debt, should pay the usurious interest, he (Lewis) would be compelled to refund it to him, and therefore, he prays an injunction against the judgment, so far as the usurious interest is concerned.    Lewis' bill makes a tender of the principal and lawful interest.    Such was the original bill in

Hargraves *vs.* Lewis.

brief. The injunction was granted. Hargraves answered the bill, and moved in Chambers for a dissolution of the injunction, which motion was refused. At the same time, the Judge in Chambers passed an order, reciting that the sum of six thousand, five hundred dollars had been tendered in satisfaction of the judgment in favor of Hargraves against Wynn, and that it was deposited in the hands of the Clerk, and directed it to be paid to the attorneys of Hargraves, in full payment of the judgment, unless the Court should decide that the complainant, Lewis, should pay an additional sum as interest upon interest. Subsequently at Chambers, and before the appearance term of the bill, the Court passed another order, notifying the attorneys that the settlement before made was final and conclusive, and giving some reasons for it. Afterwards, and at the appearance term of the bill, the order was passed which is the groundwork of the present controversy, and which I have before literally copied. Thus the case stood until the May Term of the Superior Court of Muscogee County, 1846, when Hargraves moved a rule to dismiss the cause from the docket. Lewis responded to the rule, that the cause had been finally disposed of by the order which I last referred to. The question then before the Circuit Court was, what was the effect of that order; and the determination was that it finally disposed of the cause, and Hargraves' motion was refused. From that decision Hargraves appealed to the Supreme Court; and the question made for us was, whether there was error in that decision; in other words, what was the character and effect of the order first copied in this opinion? The Supreme Court affirmed the decision of the Circuit Judge, and in their judgment defined the character of that order. *Now this bill of review is founded upon that order, charging error in law.* The Circuit Judge dismissed this bill; and upon that decision the question comes before us by another writ of error, to wit: *is there error in law in that order or decree?* It is conceded that if it be founded on a settlement between the parties, there can be no error to review. I say that it is, and that this Court, when the cause came first before us, so decided. With that decision I am satisfied. If I were not, I should be very loth to permit the decisions of this Court to be reviewed thus by indirection.

All that remains for me to do, is to show that this Court has decided that the order in question was founded on a voluntary set-

tlement, and is virtually the act of the parties. I shall endeavor to show that such was the judgment of the Court, and not alone the dictum of the Judge writing out the opinion ; for I think it is manifest that the judgment was founded upon the fact that there was a settlement ; and without that assumption we could not have given the judgment. That fact, evinced in the order itself, is the prime element of the judgment. Without it there would have been no such judgment. It is *the* judgment. The assumption of Hargraves, in the Court below, in support of his rule, was that these orders of Judge *Sturgis* were null and void, and for that reason did not dispose of the cause. And the complaint made of the decision of the Court below, before this Court, was that it gave effect to those orders, when, according to law, they were void. It will be seen, by reference to the argument of counsel reported in 3 *Kelly*, that the plaintiff in error in that case took the ground that the final order, passed at the appearance term of the bill, was *coram non judice.* This Court states the question made in that case thus : " The Court, after argument, had discharged the rule ; and *that* is the judgment to which Hargraves, the plaintiff in error, excepts, and complains that the Court erred in ruling that the orders passed by Judge *Sturgis* finally disposed of the bill, *because said orders are void and of no effect, in this, that the Judge of the Superior Court, as Chancellor, has no power to grant a final decree in this cause, without the intervention of a Jury.* Thus we have the question for the revision of this Court." 3 *Kelly*, 164. This Court being thus called upon to decide upon the validity of those three orders, considered separately the two first, and giving reasons at large, decided in the following words : " *under these views of this subject, it is the judgment of this Court, that those orders were passed without authority, and are void and of none effect."* 3 *Kelly*, 168.

Passing, then, to the consideration of the third order passed by Judge *Sturgis*, and which is *the order now* being considered, this Court say, " having disposed of the orders in Chambers, by declaring them null, we proceed to inquire into the *character and effect* of the order passed in the cause at the appearance term. This was claimed to be a decree, by the counsel for the plaintiff in error. We do not so consider it. If we did view it in *the light of a decree, we would, for the reasons, in part, upon which we pronounce the other orders null, declare this null also.* It is very

brief, and sufficiently informal. It recites that, the Court having sustained the bill, and the party defendant having accepted the money tendered, ordered, &c. It was competent for these par-ties to settle this cause out of Court, and to agree that an order disposing of it should be entered upon the minutes of the Court. Such an agreement seems to be shadowed forth in this order; the terms of it are not distinctly stated; but it is stated that the party defendant had accepted the money tendered in the bill. Discarding, then, from our consideration the previous orders al-together, as wholly void, we infer that this acceptance *was volun-tary, and that there was a settlement between the parties, and that this order is the evidence of it.* We infer, likewise, as the Court had the power to enter such a settlement in term upon the min-utes, that it was regularly made; and if so, this was a final disposi-tion of the cause." 3 *Kelly,* 169.

Thus it is manifest that in the case heretofore before this Court, we were called upon to pass upon the validity of these orders, and to determine their character and effect. The two first orders were adjudged null and void; that was *their* character, and of course they could have no effect. In determining upon the third, (and still be it remembered, the one now before us,) we charac-terize it as *not being a decree;* that is, not purporting to be a de-cree of the Court, passed upon its own authority; meaning, ob-viously, to use the word *decree* as contradistinguished from the action of the Court founded upon a settlement between the par-ties. The Court say, that if they did view it in the light of a decree, they would pronounce it void also. How, then, do they view the matter? They rule that there was a voluntary settle-ment, and that the order is the evidence of it; and so characterizing it; and because there was a voluntary settlement, they give effect to it, and affirm the judgment below; so that it is, to my mind, per-fectly manifest that this Court has adjudged this order to be founded on a settlement. It is difficult for me to imagine any other construc-tion of the case in 3 *Kelly.* No one, it seems to me, can read that case, without seeing that, upon their own principles, this Court could not have given any effect to that order, without first determining that *there was a settlement, and that it was the evidence of a settle-ment.*

Called upon now to say whether that order is subject to re-view, I say it is not, because it is only an order passed by the

Court to consummate a settlement made by the parties. It is the act of the parties. As I before stated, I will not now discuss the question whether we decided right in determining as we did. As I am satisfied with that decision, it would be a useless labor to do so now. It is both convenient and right, upon this occasion, to rest upon the maxim, *stare decisis et non quieta movere.*

That part of the order which perpetually enjoins the execution, is merely surplusage. If there was a settlement of the cause, it disposed of all that was in controversy in it.

Let the judgment below be affirmed.

WARNER, J. dissenting.

This is a bill of review to reverse a former decree of the Superior] Court, exercising jurisdiction in Chancery, under the Statutes of this State, made in a cause in which Felix Lewis was complainant, and George Hargraves and William L. Wynn, defendants. The object of the bill now sought to be reviewed, was to be relieved against a judgment confessed by Wynn to Hargraves, for about the sum of ten thousand dollars, the original consideration of which is alleged to have been founded on a usurious contract. The main ground of equity asserted by Lewis in his bill, and upon which his title to relief is predicated is, that he was the *principal borrower* of the money from Hargraves, and that Wynn was his *security only* therefor, and that if Wynn is compelled to pay the entire amount of the judgment to Hargraves, as such *security*, he, Lewis, will be compelled to reimburse Wynn, as his security, for the whole amount of the judgment confessed by Wynn, as the security of Lewis, to Hargraves; therefore Lewis paid into the Clerk's office, the principal and lawful interest admitted by him to be due Hargraves, amounting to the sum of six thousand five hundred dollars, and prayed a perpetual injunction against Hargraves, to restrain him from collecting the balance of his judgment so confessed by Wynn, as the security of Lewis, as before stated. The entire equity of Lewis, it will be perceived, is based on the allegation, that if Wynn, as his *security*, shall be compelled to pay the full amount of the judgment to Hargraves, that he, Lewis, will be compelled to refund to Wynn

Hargraves *vs.* Lewis.

the amount so paid. At the first term of the Court after filing the original bill of Lewis against Hargraves, the Superior Court, being then in session, passed the following judgment or decree in the cause :

"FELIX LEWIS

*vs.* } *Bill for injunction.*

GEORGE HARGRAVES and WM. L. WYNN.

"The Court having sustained the bill, and the party defendant having accepted the money *tendered, Ordered,* that the said bill be sustained and the injunction *made perpetual.*"

I have thus stated the object of the bill, and the judgment or decree of the Court made thereon, as the same appears of record, which is now sought to be reviewed, and set aside for error apparent on the face of the record. In the bill of review there are several grounds of error alleged as being apparent on the face of the record and decree; but I shall only notice two of them—first, that there is no equity apparent on the face of the original bill, which would entitle Lewis, the complainant, to any relief in a Court of Equity. Second, that it appears upon the face of the record, that the judgment or decree of the Court, perpetually enjoining the collection of Hargraves' judgment, was made without the intervention of a Jury.

I will first consider Lewis' right or title to relief, as exhibited on the face of the record; for if the record does not disclose any right or title in him, to have had the judgment or decree of the Court in his favor, perpetually enjoining Hargraves' judgment, then there is error in law apparent on the face of the record. If I understand the rule established by a majority of this Court in *Whitehead vs. Peck*, Lewis, the complainant in the bill against Hargraves, had no right or title to maintain his bill in a Court of Equity, to have Hargraves' judgment perpetually enjoined against Wynn, who was the *security* of Lewis; for, as I understand the rule established by the Court in that case, if Wynn, as the *security* of Lewis, had paid the *usurious* interest to Hargraves, he could not have recovered it from Lewis, for want of *privity in law* between them.

See the judgment of the Court in *Whitehead vs. Peck*, 1 *Kelly's Rep.* 140.

If the rule established by the majority of the Court in *Whitehead vs. Peck*, is to stand, and be considered as binding authority

on the Court, then, according to my understanding of it, as appli-cable to the record and decree now sought to be reviewed, it is conclusive against the title of Lewis to the equitable relief which he obtained, by the decree of a perpetual injunction against the collection of Hargraves' judgment from Wynn, as the security of Lewis; and therefore, the bill of review ought to be sustained on that ground.

Since the adoption of the Constitution of 1798, there is no le-gislative enactment which declares, in express terms, that Equity causes shall be submitted to, and tried by a Jury; but it is ex-pressly declared by the 16th section of the Judiciary Act of 1792, and the 8th section of the Judiciary Act of 1797, that after an Equity cause is set down for hearing, "the Superior Court shall then submit the merits of the suit, with the evidence thereon, and all matters respecting the same, to a special Jury, who shall give their verdict on the same." *Watk. Dig.* 480, 632. By the 5th section of the 4th article of the Constitution of 1798, it is de-clared, " trial by Jury, as *heretofore used* in this State, shall remain inviolate." *Prince*, 912. It is true that the Judiciary Acts of 1792 and 1797 were both repealed by the Judiciary Act of 1799; but the former Acts are cited, for the purpose of showing in what manner trial by Jury was *used* in this State, at the time of the adoption of the Constitution in 1798. By reference to the Acts of 1792 and 1797, it will readily be perceived that Equity causes were required to be submitted to, and tried by a special Jury. Before, and at the time of the adoption of the Constitution of 1798, trial by Jury in Equity causes was *used in this State*, and the Constitution expressly declares, that "trial by Jury, as *hereto-fore used* in this State, shall remain inviolate." The right of the citizen then, to have his cause, pending on the Equity side of the Superior Court, submitted to a special Jury before a final decree is made against him, is expressly secured by the Constitution, of which right, neither the Legislature nor the Courts have the law-ful authority to deprive him, without a reckless violation of the 5th section of the 4th article of that Constitution.

It appears upon the face of the record and decree sought to be reviewed and reversed, that a *final decree* of the Superior Court has been made, *perpetually enjoining* Hargraves, the complainant in the bill of review, from collecting his judgment from Wynn, without the intervention of a Jury. I repeat, it is apparent on

the face of the record sought to be reviewed, that Hargraves has been deprived, cut off, and perpetually enjoined from the exercise of his legal right to collect his judgment, by the final decree of the Superior Court, exercising Equity jurisdiction, without having the benefit of the trial by Jury, *heretofore used* in this State, as secured to him by the Constitution; consequently, there is *error in law apparent on the face of the decree.* The parties to this record have been before this Court on two former occasions. The case first made its appearance at Americus, at the July Term, 1847, and the action of the Court thereon will be found reported in 3 *Kelly*, 162. The only question made by the record in that case, for the judgment of this Court was, whether the Court below had erred in ruling, that the decree now sought to be reviewed and reversed, *finally disposed of the bill* filed by Lewis against Hargraves and Wynn. The Court below had ruled, that the bill was *finally disposed of;* that the cause was at an end by the judgment, or decree of the Superior Court thereon, as stated in the record; and this Court *affirmed* the judgment of the Court below in that case. In that judgment I concurred, holding with my brethren, that the order of the Superior Court, exercising jurisdiction in Equity, granting a perpetual injunction in the cause, was a *final disposition* of it; and *that,* I repeat, was the *only* question made by the record in that case, for the judgment of this Court. There stood the record of the Superior Court, having jurisdiction of the subject-matter, on the face of which was a prayer for a perpetual injunction against Hargraves; and there stood the order or decree of that Court granting the prayer of the bill, and making the injunction *perpetual.* Would it have been competent to have set aside the judgment or decree of the Superior Court, so appearing on the face of its records, on motion, or in any other *collateral* manner? Certainly not; and whatever *reasons* may have been given for the judgment of the Court in that case, the judgment itself was right, both upon principle and authority. If a decree, made by a Court of Equity, has been signed and enrolled, so that the cause cannot be reheard, and a party seeks to reverse the decree, the remedy is by bill of review. 3 *Danl's Ch. Pr.* 1726. 2 *Maddock's Ch. Pr.* 536. It is the practice in the English Court of Chancery, to embody the substance of the bill, pleadings, and answer in the decree; but in the Courts of the United States, the decree usually

contains a mere reference to the antecedent proceedings, without embodying them; but for the purpose of examining all *errors of law*, the bill, answers, and other proceedings are, in our practice, as much a part of the record before the Court, as the decree itself. *Story's Eq. Pl.* 324, §407. *Whiting vs. the Bank of the United States*, 13 *Peters' Rep.* 13.

When this cause was before this Court in 1847, the judgment of the Court was, that there had been a final disposition of it, as appeared from the records of the Superior Court; and when it was before this Court again during the present year at Talbotton, this Court recognized the judgment of the Superior Court, making the injunction against Hargraves perpetual, as a *final decree* in the cause which is now sought to be reviewed. See *Hargraves vs. Lewis*, 6 *Ga. Rep.* 207. The bill originally filed by Lewis against Hargraves and Wynn, was finally disposed of by the decree of the Superior Court, which perpetually enjoined Hargraves from collecting the thirty-five hundred dollars, the balance due on his judgment, as appears from the records of the Superior Court. The complainant, (Hargraves,) whose rights are prejudiced by that decree, now brings his bill of review to reverse it, for error in law, apparent on its face. There stands the decree on the records of the Superior Court, duly enrolled according to our practice, which perpetually restrains Hargraves from the exercise and enjoyment of his legal rights, acquired by his judgment against Wynn. *That judgment* cannot be set aside on motion or impeached *collaterally*. I am satisfied, for the reasons already given, that there is error in law, apparent on the face of that record and decree, and that the complainant has pursued the proper, and, in my judgment, the only legitimate remedy to reverse it, by exhibiting his bill of review. It has been insisted that the decree now sought to be reviewed, was founded on a voluntary settlement between Lewis and Hargraves, and the reasons given by the Judge who delivered the judgment of this Court in *Hargraves vs. Lewis*, (3 *Kelly*, 169,) is relied on. Perhaps it would be a sufficient answer to this argument to say, that the question of *settlement* was not made by the record in that case. As I have before stated, the question, and the *only question* made for the judgment of this Court in that case was, whether the case between Lewis and Hargraves and Wynn, had been *finally disposed of* by the judgment or decree of the Superior Court, as exhibited in

Hargraves *vs.* Lewis.

the record. What was the matter in dispute between the parties *to be settled?* It was the *balance due* on Hargraves' judgment, over and above the sum of six thousand five hundred dollars, which Lewis admitted to be due, and which he deposited in the Clerk's office. There was *no controversy* between the parties as to the principal and lawful interest *to be settled.* Lewis paid *that* into the Clerk's office as being lawfully and justly due Hargraves, so as to enable him to obtain relief against the *balance* of the judgment, which was the only matter in controversy between them. The entire record is deathly silent as to any *settlement* of the *only matter* which was in controversy between the parties, and which the decree of the Court *perpetually enjoins.*

It is true, the Judge who wrote out the judgment of this Court in *Hargraves vs. Lewis,* in attempting to account for the very extraordinary decree of the Court as it appeared on the record, does say, it was competent for the parties to settle the case out of Court, and that such an agreement seems to be *shadowed forth* in the order. That it was entirely competent for the parties to have settled the case out of Court, I do not doubt, but my objection is, that there is *no evidence of any such settlement* in the record of that case. The question of *settlement* was not presented by the record for the judgment of the Court. The settlement of a case is the act of the parties—a judgment or decree of the Court is the sentence of the law, and is binding upon parties and privies until reversed. What money was it that Hargraves *accepted,* from which a *settlement* is to be inferred, of the *balance* of the judgment which was perpetually enjoined? Most clearly the money *tendered* by Lewis, and about which there was *no dispute.* The decree of the Court is in the following words—after reciting the parties: "The Court having sustained the bill, and the party defendant *having accepted the money tendered, Ordered,* that said bill be sustained, and the injunction made perpetual."

The argument amounts to this: that inasmuch as Hargraves *accepted* the principal and lawful interest, admitted by Lewis to be justly due *when tendered,* and about which there was *no dispute,* therefore such acceptance shall operate as *a settlement of the balance due on the judgment,* and Hargraves shall be perpetually enjoined from collecting such balance. In *Byrd vs. Odam,* (9 *Ala. Rep.* 755,) it was held, that where a complainant brings money into Court, insisting it is all that is due to the defendant, and the

Hargraves *vs.* Lewis.

Court makes an order that it be paid to the latter, such defendant will not be *estopped, because he received the money so offered, from showing that a larger amount is due to him from such complainant.* The Supreme Court of Alabama have undoubtedly established the true and proper rule. That Court would not hold Hargraves had made a *final settlement* of the entire judgment of ten thousand dollars, simply because he *accepted* the sum of six thousand five hundred, admitted by the complainant to be due on the judgment, and *tendered* to him in payment, as a *prerequisite* to enable him to obtain relief against the *balance* of the judgment. That Court would hold, that the *acceptance* of the money admitted to be due and *tendered*, would be *no evidence* of a *settlement* of the *balance* of the judgment, and why should it? The acceptance of the money tendered by the complainant on the part of Hargraves, is evidence of the payment of the judgment, *pro tanto*, and nothing more. How a *final settlement* of the *balance of the judgment* can be legally inferred from such acceptance, so as to authorize the Court to perpetually enjoin its collection by Hargraves, I must confess is quite beyond my power of comprehension. The complainant in the bill of review is entitled, in my judgment, to have the decree perpetually enjoining the collection of his judgment reviewed and reversed, and I will not look beyond the case made by the record before me as to what may be the rights and equities of the respective parties when the decree shall be opened. It is sufficient for me to sustain the bill of review to know, that there is error in law, apparent on the face of the decree sought to be reviewed and reversed, and I am, therefore, of the opinion that the judgment of the Court below, dismissing the complainant's bill of review, should be reversed.