### LANHAM et al. v. STATE BANK OF ROME, GA., et al.

### In re ARMUCHEE PANTS MFG. CO.

(Circuit Court of Appeals, Fifth Circuit. October 13, 1920.)

No. 3564.

1. **Bankruptcy ⊜⇒269—Tender of sum paid necessary before setting aside sale.**

   Where a bill is filed by a trustee in bankruptcy to set aside a deed made to purchasers at a sale held under order of the bankruptcy court, on the ground that the order for such sale was procured by concealment of facts, a tender to the purchasers of the sum bid at such sale is necessary, and, on exception to said bill for failure to make such tender, no amendment being offered, the bill is properly dismissed.

2. **Usury ⊜⇒95—Bill to cancel mortgage for usury must tender payment, with lawful interest.**

   Under the law of Georgia, a bill by a trustee in bankruptcy for cancellation of a deed given to secure a debt by an owner of property, who afterward conveyed to the bankrupt subject to such deed, on the ground that the debt secured was usurious, *held* not to state a cause of action, where it made no offer to pay such debt, with lawful interest.

Appeal from the District Court of the United States for the Northern District of Georgia; Samuel H. Sibley, Judge.

Suit in equity by Henderson L. Lanham, trustee in bankruptcy of the Armuchee Pants Manufacturing Company, against the State Bank of Rome, Ga., and others. Decree for defendants, and complainant appeals. Affirmed.

John Mallory Hunt, of Atlanta, Ga., and Nathan Harris, of Rome, Ga., for appellant.

R. A. Denny, Graham Wright, and Barry Wright, all of Rome, Ga., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. This appeal is brought to review the decree of the court below in dismissing on motion a bill in equity brought by the appellant, Lanham, as trustee in bankruptcy of the estate of Armuchee Pants Manufacturing Company (hereinafter called the Armuchee Company), against the appellees. The bill alleged that:

On September 9, 1912, appellee Allie W. Watters owned in fee simple two certain tracts of land in Floyd county, Ga.; one known as the "130-acre tract," and the other as the "West Rome 5-acre tract." On said September 9, 1912, said defendant Watters executed to the State Bank of Rome, whose corporate name was then the American Bank & Trust Company, a deed to secure an alleged debt of $7,500,

---

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

evidenced by a note maturing on December 15, 1912. Thereafter, on November 18, 1913, said Watters conveyed said 130-acre tract to said Armuchee Company for a consideration, stated in said deed, of $30,000, receiving back as a part of the transaction a mortgage on said 130-acre tract to secure an alleged indebtedness of said Armuchee Company to said Watters of $15,100, which was recorded on March 10, 1915. Said mortgage was held at said time and thereafter by A. W. Watters & Co., Incorporated, and at the time of the adjudication of said Armuchee Company to be a bankrupt was held and controlled by said A. W. Watters & Co., Incorporated, as a transferee.

On September 9, 1912, said Allie W. Watters executed to said State Bank of Rome, Ga. (then the American Bank & Trust Company), a deed to said West Rome 5-acre tract to secure an alleged debt of $3,800, falling due November 15, 1912. On April 27, 1914, said Watters executed to said Armuchee Company a deed to said West Rome 5-acre tract, for a consideration recited therein to be $2,200, and received back as a part of said transaction a purported mortgage, creating a lien on said 5-acre tract to secure an alleged indebtedness of $2,200, which was recorded on November 16, 1915. Said mortgage was held at the time of the filing of said involuntary petition in bankruptcy against said Armuchee Company by said defendant A. W. Watters & Co., Incorporated, said Allie W. Watters, or Lucile Watters, a sister of said Allie W. Watters; but, whichever party claimed to be the legal owner thereof, said Allie W. Watters at all times controlled the same as fully as if he owned it individually.

At the time of the filing of the involuntary proceeding in bankruptcy against said Armuchee Company, and of its adjudication to be a bankrupt, the title to said 130-acre tract and of said West Rome 5-acre tract was vested in fee simple in said Armuchee Company, subject to said deeds to secure debt executed to said above-recited bank and to said purported mortgagees, both of which are alleged to be void as against the trustee in bankruptcy of said Armuchee Company and its creditors. On April 8, 1915, an involuntary petition in bankruptcy was filed in the District Court of the Northern District of Georgia, Northwestern Division, against said Armuchee Company. Said company was duly adjudged a bankrupt on April 24, 1915, and E. A. Green was appointed its trustee. He qualified and acted as such trustee until he was discharged, as hereinafter stated, and took possession of said two tracts of land as trustee.

On June 24, 1915, said trustee filed before the referee an application to sell the real estate of said bankrupt. He prayed authority to sell said two tracts subject to the security deeds held by the State Bank of Rome, Ga. He alleged the making of the mortgage of November 18, 1913, now held by A. W. Watters & Co., Incorporated, as transferee for the alleged debt of $15,100; said mortgage being on said 130-acre tract. He averred the making of the security deed to the American Bank & Trust Company, now the State Bank of Rome, and the subsequent deed of said property by said Watters to said Armuchee Company for a consideration of $30,000, which was stated to be grossly excessive; that he in some manner secured the execution

of the above mortgage as a security to him against the indebtedness of said American Bank & Trust Company, but he held it off of the record for over a year, and recorded the same after said Armuchee Company had become hopelessly insolvent; that the said 130-acre tract had been appraised at $14,500; that, if sold subject both to the security deed of the State Bank of Rome and the foregoing mortgage, nothing would be realized; and he prayed authority to sell said property subject to the just title, lien, and claim of the State Bank of Rome, Ga., but free from the liens, claims, and titles of said A. W. Watters & Co., Incorporated, which claims, liens, and titles should attach to the proceeds of such sale, petitioner reserving the right to contest the same.

On September 27, 1915, said referee passed an order authorizing said trustee to sell said 130-acre tract subject to said security deed held by the State Bank of Rome, Ga., and also subject to the lien of the mortgage held by A. W. Watters & Co., Incorporated, as transferee. Said sale was had on October 11, 1915, and the highest and best bid for such property was $25, by J. H. O'Neill, bidding for the State Bank of Rome. Said sale was on said date reported by said trustee to said referee, with a recommendation that the sale be confirmed, which was done on said date; the said deed being executed to the State Bank of Rome, Ga., subject to said security deed of $7,500, and subject to said purported mortgage to secure said indebtedness of $15,100, claimed to be held by said A. W. Watters & Co., Incorporated.

On the 18th day of December, 1915, said referee also passed an order authorizing said trustee to sell said West Rome 5-acre tract, subject to the security deed held thereon by the State Bank of Rome, Ga., and of the purported mortgage to secure said debt of $2,200, executed to said A. W. Watters. Said property was sold on January 11, 1916, and purchased by the State Bank of Rome at the sum of $15, it assuming taxes for 1915 and 1916, which said sale was confirmed on January 12, 1916, and a deed executed by said trustee to said bank, conveying to it the equity in said West Rome 5-acre tract; said deed being subject to said security deed securing said debt of $3,800, claimed by said bank, and subject to said purported mortgage to secure said debt of $2,200, executed to said Watters.

Said State Bank has gone through a process of liquidation. The defendants J. H. O'Neill and W. S. Griffin secured all or a great part of the assets of said bank in said liquidation, and now claim to be the owners of said two tracts of land, subject to the rights of said defendant A. W. Watters & Co., Incorporated, or the said Allie W. Watters; one or the other of said last-mentioned defendants being now in actual possession of said two tracts of land under an arrangement with said bank hereinafter more fully set out. Said O'Neill and Griffin claimed said two tracts of land by virtue of a deed executed from said Bank of Rome, Ga., to Graham Wright, dated March 13, 1917, conveying said two tracts of land and various other property, real and personal, to said Wright, and by a quitclaim deed from said

Wright to said O'Neill and Griffin, dated March 1, 1918, conveying said two tracts of land, as well as various other real estate.

On September 9, 1912, the date of said security deeds from said Watters to said bank, O'Neill was an officer and stockholder in the bank, and Griffin was a stockholder in the bank. Watters was prior to its bankruptcy an officer and stockholder of said Armuchee Company. A. W. Watters & Co., Incorporated, was incorporated shortly after the bankruptcy of the Armuchee Company, and A. W. Watters has since its organization been an officer and stockholder thereof. Graham Wright did not pay the consideration of $28,000 recited in the deed from said bank to himself, but was acting as an attorney at law, and as an agent for O'Neill, Griffin, and said bank; said O'Neill and Griffin using this method to obtain the legal title to the assets of said bank in said liquidation.

Said mortgages given by said Armuchee Company to said Watters were void as against said trustee and the creditors of said bankrupt, because the Armuchee Company, at the time they were each given, did not owe and was not indebted in any sum to said Watters. Said mortgage securing $15,100 was put to record within four months of the adjudication of said Armuchee Company to be a bankrupt. Said A. W. Watters & Co. well knew at said time said Armuchee Company was insolvent. Said mortgage securing $2,200 was not recorded until some time after said Armuchee Company was adjudged a bankrupt.

Each deed to secure a debt given to said State Bank of Rome was void, because the debt secured by each was usurious. Said bank, acting through O'Neill, and said A. W. Watters & Co., Incorporated, acting through A. W. Watters, and said Watters individually, entered into a scheme to defraud said trustee and creditors. They agreed that they would conceal the fact of the invalidity and voidness of these deeds and mortgages, and procure the sale of the property subject to the same; the bank agreeing to bid some nominal sum for the supposed equity in each of said two tracts of land. The parties entered into a written agreement, an exhibit to said bill, to the effect that said bank would buy said property, if obtainable, at a satisfactory price at the trustee's sale, and, if it became the purchaser thereat, would exercise its power of sale under its security deeds, and if it bought in said properties thereunder it would sell them to A. W. Watters & Co., Incorporated, on a credit, taking a first mortgage or security deed on said properties and certain other security. Simultaneously with the closing of the transaction the mortgages executed to Allie W. Watters by the Armuchee Company were to be canceled.

The contract did not provide that the bank must buy, nor did it covenant that Watters was not to bid. Said scheme was put through, and said two tracts of land were procured to be ordered sold by said referee, subject to said security deeds held by said bank and to said mortgages, by withholding from the referee the fact that said purported security deeds and said mortgages were void. The total value of the 130-acre tract is alleged to be from $12,000 to $15,000, and of said West Rome 5-acre tract to be from $4,000 to $6,000.

The bill averred that the estate of said bankrupt had been theretofore wound up and the trustee discharged, that the estate has been since reopened by order of court, and plaintiff been appointed trustee. The dates of these occurrences are not alleged. The bill sought a cancellation of said security deeds and said mortgages as being null and void, and a cloud on the title to said land, and that the title and right of possession thereof be decreed to be in the plaintiff; that the land be ordered sold by plaintiff as trustee, and the proceeds paid out in accordance with law.

The defendants moved to dismiss the bill on a number of grounds, among which it is set up: That no averment of facts is made showing such fraud as would warrant setting aside said sales, said security deeds, or said mortgages. That no offer of tender is made, either of the purchase money paid on the sales attacked, or the principal of the debt attacked as usurious, with legal interest thereon. That the bill shows plaintiff has been guilty of laches.

The court below sustained the motion to dismiss the bill for several reasons; one of these was because of laches. His opinion recites:

"The bill to set aside the trustee's sale and the referee's orders of confirmation was filed long after the bankrupt estate had been paid out and closed and the trustee discharged, and about four years after the sales occurred. No excuse whatever for the delay is averred. The title to the property involved seems now to be in O'Neill and Griffin, who obtained the same, with other property, at a price of $28,000, upon the liquidation of the State Bank of Rome, the purchaser at the trustee's sale. The delay has therefore complicated the rights of parties interested and changed the parties themselves. Such laches appears as ought to deprive the petitioner of relief at this late date."

The learned District Judge also held the bill fatally defective for its failure to offer to repay the debts due to the State Bank of Rome, Ga., or the sums bid at the trustee's sale. He held that to cancel the mortgages given by the bankrupt to Watters, as a part of the transaction of the purchase of these tracts of land under the allegations of this bill, would be to enable the bankrupt to obtain the property on different terms than it had bargained for, and would be for the court to make a trade for the seller to which he had not agreed. The court also found that no fraud was sufficiently charged in the bill to authorize the setting aside of the sale.

It is alleged in the bill that "as a part of said transaction," to wit, the sale of said 130-acre tract, said Watters received back from said Armuchee Company a mortgage thereon to secure an alleged indebtedness of $15,100, and that "as a part of said transaction," to wit, the sale of said West Rome 5-acre tract, a mortgage to secure an alleged indebtedness of $2,200. It is further alleged that at the time of the filing of said petition in involuntary bankruptcy and of the adjudication of said Armuchee Company to be a bankrupt the title to each of said tracts of land was vested in said company, subject to said security deeds executed by said Watters to said State Bank of Rome, Ga., and to said purported mortgages; said deeds being charged to be void as made to secure a debt of Watters infected with usury, and said mortgages being alleged to be void because it is charged that

at the time each was executed the Armuchee Company did not owe and was not indebted to said Watters in any sum whatever. There is no allegation that the Armuchee Company, in purchasing said tracts of land, paid any sum of money to said Watters; and it is alleged that these mortgages were given as a part of the transaction of the purchase of each piece of said land.

It is quite consonant with the allegations of the bill that the sums secured thereby were a part of the consideration named in the deeds from Watters to the Armuchee Company. The amount of the debt secured by the mortgage on the West Rome 5-acre tract is the exact sum named as the consideration in the deed executed by Watters to said company.

This is in harmony with the allegation in the petition of Green, trustee, alleging that the consideration named in the deed to said 130-acre tract—$30,000—was grossly excessive, and asking that the sale thereof should be made free from the lien of said mortgage; the real claim, lien, and titles of the holder thereof to attach to the proceeds, said trustee reserving the right to contest the same. It cannot be, therefore, said that the bill charges that there is no consideration for the making of the mortgages, and there is no allegation of any payment or discharge thereof by said Armuchee Company since they were made.

[1, 2] The prayer of the bill is for the cancellation, not only of the trustee's deeds to the State Bank of Rome, Ga., but for the cancellation of the security deeds made by Watters to said bank, subject to which the two tracts were conveyed to the Armuchee Company, and the two mortgages executed by it to Watters as a part of the transaction of its purchase. No tender of the sums paid at the trustee's sale is made. No tender of the amount of the debts due to the State Bank of Rome, Ga., with legal interest, is made; but the prayer is for the cancellation of these deeds, without any payment of the debts secured thereby, stripped of any usury.

Without passing on the other questions involved, we think that the failure of the plaintiff to offer to pay the sums bid at the trustee's sale and the debt due the State Bank of Rome, Ga., are decisive of the case. The motion to dismiss the bill expressly pointed out these failures, and no effort was made to cure the same.

The debt due the bank was due by Watters. The deeds were made by him. It was not a debt incurred by the bankrupt; but it had bought subject to the previous deeds made by Watters. But, even if it had made the deeds and contracted the debt to the bank, it is settled law that no proceeding by the debtor to cancel a deed securing an usurious debt can be maintained without tendering the debt secured and lawful interest thereon.

"Though a deed be void for usury, or a transfer of a bond for title be void because the debt to secure the payment of which the transfer was made was usurious, these papers will not be canceled or set aside * * * without payment or tender of the principal of the debt and lawful interest; and this upon the principle that whoever would have equity must do equity." Matthews v. Banks et al., 146 Ga. 732, 92 S. E. 52; Campbell et al. v. Murray et al., 62 Ga. 86.

Our conclusion is that the court did not err in sustaining the motion to dismiss the bill in this case, and the decree below is therefore affirmed.